Filed 2/20/24  P. v. Lamont CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>NOLAN THOMAS LAMONT,<br><br>　　　Defendant and Appellant. | A166739<br><br><br>(Mendocino County<br>Super. Ct. No. 22CR01305-A) |

Defendant pleaded guilty to grand theft (Pen. Code, § 487, subd. (a); count one)[1] and admitted a prior strike allegation.  He was sentenced to a total of four years in prison, comprised of the middle term of two years doubled to four years under the "Three Strikes" law.  (§§ 487, 667, subds. (b)–(i).)  On appeal, defendant contends the trial court improperly denied his motion to dismiss his prior strike conviction.  He contends that section 1385, subdivision (c) applies to prior strike convictions and that the trial court abused its discretion by failing to properly apply the statute's provisions. Defendant further contends that the trial court abused its discretion by denying his motion to dismiss his strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

We find that section 1385, subdivision (c) does not apply to prior strike convictions and that the trial court's denial of defendant's *Romero* motion was not an abuse of discretion.

## BACKGROUND

Defendant was charged by information with grand theft (§ 487, subd. (a); count one), and it was alleged that he suffered a prior strike for a 2011 robbery conviction (§ 211). Defendant pleaded guilty to count one and admitted the prior strike allegation. Defendant agreed the court could impose any lawful sentence.

The factual background of the instant offense is based on the information included in the probation report. On June 2, 2022, Stephanie C. and her son were at a café. She noticed a man, later identified as defendant, in the area. At approximately 11:45 a.m., Stephanie C. noticed that her backpack was missing. She used her son's cell phone to track the location of her own phone, which had been in her backpack. Her phone was tracked to an area near the railroad tracks. At approximately 11:55 a.m., Stephanie C. arrived at the location near the railroad tracks, and she saw defendant near a van with the door partially open. She looked in the van and saw her backpack and her credit card. As she grabbed her belongings from the van, defendant aggressively yelled at her and tried to fight her son. Stephanie C. noticed that her wallet and her cell phone were still missing. An unidentified woman approached the victim and said it was " 'hard living outside' " and walked away. The tracking application showed the victim's phone moving in the direction of the unidentified woman.

When police officers arrived, they approached the unidentified woman and Justin Garner, who was standing near her. The victim's son used the tracking application to cause the victim's phone to make a beeping sound.

2

The police officers heard the sound while they spoke with the woman and Garner. They searched them and found the victim's phone, wallet, and credit cards in Garner's pockets.

Garner told the officers that defendant had given him the phone and wallet about 10 minutes earlier. Defendant admitted he previously had the victim's backpack but said that he found it along the railroad tracks and that the phone and wallet were not in the backpack.

The victim told the officers that one of her credit cards had a balance of $1,020.09; an EBT (electronic benefit transfer) card in her wallet had a balance of approximately $600; a gift card had a balance of $50; and her bank debit card had a balance of approximately $20,000. The victim's phone was worth approximately $1,000.

On August 26, 2022, defendant pleaded guilty to one count of grand theft (§ 487, subd. (a)) and admitted he suffered a prior strike conviction for a 2011 robbery (§ 211).

On November 23, 2022, defendant filed a request for the court to strike defendant's prior strike under section 1385 and *People v. Superior Court (Romero), supra*, 13 Cal.4th 497. Defendant argued that the trial court should exercise its discretion to dismiss the strike because the current offense is not a violent felony under section 667.5, subdivision (c) and the current offense is connected to mental illness. Defendant's motion attached medical records from 2016 stating that defendant was diagnosed with a schizoaffective disorder and argued that "[c]ommon sense requires that schizoaffective disorder diagnosis to be deemed 'connected' to the defendant's current grand theft offense in the absence of evidence of a subsequent diagnosis indicating recovery." Thus, he argued, the trial court was required under section 1385, subdivision (c) to " 'consider and afford great weigh [*sic*]' "

3

to evidence that defendant's current offense is connected to mental illness and that the current offense is not a violent felony.

The People's opposition to defendant's request argued that section 1385, subdivision (c) does not apply to prior strike convictions and that the circumstances did not warrant dismissal of defendant's prior strike under *Romero*. The People attached police reports of defendant's 2011 prior strike conviction stating that he was involved in a multi-victim, multi-defendant robbery; he beat the two victims; and he had brass knuckles in his possession when he was arrested. Defendant was given probation after pleading guilty. His probation was revoked and reinstated multiple times. The People also attached police reports for a 2015 conviction for resisting an executive officer. (§ 69.) In that case, the police responded to defendant's residence after reports that he was threatening family members. Defendant did not obey police commands and aggressively approached the officers. The police saw defendant holding a yearly calendar with his left hand. The calendar was covering defendant's right hand. The officer ordered defendant to show his right hand. Defendant refused to do so and then threw the calendar at the officer, striking him in the face. When the officer attempted to grab defendant's arm, defendant grabbed the officer on his right shoulder area and tore a lapel off the officer's uniform. Three officers struggled with defendant before they were able to subdue him and place him in handcuffs. Defendant was convicted by plea in 2015 and given probation.

The defendant filed a reply to the People's opposition in which he argued that section 1385, subdivision (c) applies to dismissal of prior strikes. He further argued that the facts of defendant's 2015 conviction and the current offense were insufficient to justify a finding under section 1385,

4

subdivision (c)(2) that there was a likelihood that dismissal of the 2011 prior strike " 'would result in physical injury or serious danger to others.' "

At the sentencing hearing on December 5, 2022, the parties argued whether subdivision (c) of section 1385 applied to prior strike convictions, as well as whether the trial court should exercise its discretion to dismiss the prior strike under *Romero*. The trial court declined to dismiss defendant's prior strike. It first explained that section 1385, subdivision (c) does not apply to prior strikes because they are not enhancements. It then found that dismissing the prior strike was not in the furtherance of justice. The trial court explained it had considered the current offense; the 2011 prior strike; the 2015 conviction; and defendant's background, including his time at rehabilitation programs. It found that the current offense was not de minimus because defendant initially reacted to the victim and her son with hostility when confronted. The court also commented on the seriousness of both of defendant's prior felonies, which involved violence.

The trial court followed the recommendation in the probation report and sentenced defendant to the middle term of two years doubled to four years based on the prior strike.

## DISCUSSION

### I. *Prior Strike Is Not a Sentence Enhancement*

Defendant argues the trial court erred by finding that the recent amendments to section 1385 apply only to sentencing enhancements and that a prior strike is not a sentencing enhancement. We review questions of statutory construction de novo. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).) We reject defendant's claim.

5

### A.     Senate Bill No. 81

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) amended section 1385 to add subdivision (c), which states: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1); Stats. 2021, ch. 721, § 1.)  In exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  The circumstances which defendant claims are relevant here are: "The current offense is connected to mental illness" (§ 1385, subd. (c)(2)(D)); "[t]he current offense is not a violent felony as defined in subdivision (c) of Section 667.5" (§ 1385, subd. (c)(2)(F)); and "[t]he enhancement is based on a prior conviction that is over five years old" (§ 1385, subd. (c)(2)(H)).

### B.     Analysis

*Burke, supra*, 89 Cal.App.5th 237, recently addressed whether Senate Bill 81's amendments to section 1385 apply to prior strike convictions. (*Burke*, at p. 242.)  It first explained the familiar canons of statutory construction, including that when determining the intent of the Legislature, courts first look to the words of the statutes.  If there is no ambiguity in the language of the statute, " ' " 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " ' " (*Ibid.*)  If the language is ambiguous, then courts may consider extrinsic sources, including the legislative history.  (*Ibid.*)  " 'Ordinarily words used in a statute

6

are presumed to be used in accordance with their established legal or technical meaning.' " (*Id.* at p. 243.)

Senate Bill 81 added subdivision (c) to section 1385, which expressly applies to dismissal of "an *enhancement* if it is in the furtherance of justice." (*Burke, supra*, 89 Cal.App.5th 237 at p. 243; § 1385, subd. (c); Stats. 2021, ch. 721, § 1.) *Burke* explained that the well-established technical meaning of "enhancement" is "an additional term of imprisonment added to the base term." (Cal. Rules of Court, rule 4.405(5).) In contrast, "the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Burke*, at p. 243, citing *People v. Superior Court (Romero), supra*, 13 Cal.4th at p. 527; see *People v. Williams* (2014) 227 Cal.App.4th 733, 744; see also *People v. Flores* (2021) 63 Cal.App.5th 368, 384 ["A prior serious felony enhancement functions to add an additional term of punishment to a defendant's sentence. Prior strike convictions, in contrast, trigger application of the Three Strikes law, which is not an enhancement but rather an alternative penalty provision"].) *Burke* concluded: "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law. [Citation.] The Legislature did not otherwise define the word 'enhancement' in section 1385. Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history cited by defendant. [Citation.] The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, at pp. 243–244.)

Defendant acknowledges *Burke*'s holding and that multiple courts have found that alternative sentencing schemes differ from enhancements. Defendant further acknowledges that when terms in a statute have been judicially construed, there is a strong presumption that the Legislature is using them " ' "in the precise and technical sense which had been placed upon them by the courts." ' " (*People v. Weidert* (1985) 39 Cal.3d 836, 846.) Nonetheless, defendant argues we should depart from this presumption and the case authority explaining that an alternative sentencing scheme is not an enhancement because "there is no indication that the Legislature intended to adopt the technical meaning of the term ["enhancement"] in enacting SB 81." In support of his argument, defendant contends that a narrow construction of the term "enhancement" would render other parts of the statute surplusage and that the legislative history supports a broader reading of the term.

Defendant's argument misses the mark. As explained *ante*, and in *Burke*, the term "enhancement" has an established meaning in the sentencing context. Thus, we presume the Legislature was aware of the judicial construction of both the term "enhancement" and the case law finding that the Three Strikes law is an alternative sentencing scheme rather than an enhancement. (See, e.g., *People v. Williams, supra*, 227 Cal.App.4th at p. 744 [Three Strikes law "is not an enhancement because it does not add an additional term of imprisonment to the base term. Instead, it provides for an alternative sentence"]; *In re Friend* (2021) 11 Cal.5th 720, 730 [" 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts' "].) For the

reasons discussed in *People v. Olay* (2023) 98 Cal.App.5th 60 (petn. for review filed Jan. 30, 2024, S283633), we reject defendant's arguments that construing the term "enhancement" as having its established technical meaning renders other portions of that statute surplusage and that the legislative history supports a broader reading of the term.

## II. *Denial of Romero Motion*

Under subdivision (a) of section 1385, the trial court may dismiss a prior strike in the furtherance of justice. (*People v. Superior Court (Romero), supra*, 13 Cal.4th at pp. 529–530.) We review a trial court's refusal to dismiss a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) In *People v. Williams* (1998) 17 Cal.4th 148, our Supreme Court held that in deciding whether to dismiss a prior strike conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

We find no abuse of discretion. The trial court properly considered defendant's prior robbery conviction, which the court found was "an extremely violent offense." It also considered defendant's section 69 conviction, which involved resisting an officer with force or threat of force. The court considered defendant's mental health history and his time in rehabilitation programs; however, it did not find defendant's mental health history to be a mitigating circumstance because there was no evidence that his crimes were linked to his mental illness. The record indicates the trial

9

court considered the relevant facts and reached an impartial decision. (*Carmony, supra*, 33 Cal.4th at p. 378.) Defendant has failed to demonstrate that the trial court's decision was irrational or arbitrary. (*Ibid.*)

## III.  *Correction of Abstract of Judgment*

The parties agree that the abstract of judgment does not accurately reflect the court's oral imposition of sentence. At the sentencing hearing, the trial court sentenced defendant to the middle term of two years doubled to four years. However, the abstract of judgment states the total time imposed is eight years. Where there is a discrepancy between the abstract of judgment and the trial court's oral pronouncement of sentence, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185–186.) Accordingly, we order the trial court to correct the abstract of judgment to reflect that the trial court sentenced the defendant to the middle term of two years doubled to four years. (*Ibid.*)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect that defendant was sentenced to the middle term of two years doubled to four years. The trial court is further directed to forward a copy of the corrected abstract of judgment to Department of Corrections and Rehabilitation.

 

_____
Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A166739/*People v. Nolan Thomas Lamont*

10